465 So.2d 1092 (1985)
Randy DIXON
v.
STATE of Mississippi.
No. 54556.
Supreme Court of Mississippi.
March 20, 1985.
*1093 H. Lee Bailey, Jr., Bailey & Bailey, Winona, for appellant.
Bill Allain, Atty. Gen. by Anita Mathews Stamps, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
*1094 PATTERSON, Chief Justice, for the Court:
A five-count indictment was returned against Randy Dixon in the Circuit Court of Montgomery County, charging him with possession of Schedule II controlled substances methaqualone, meperidine, and secobarbital; and Schedule IV controlled substances diazepam and ethchlorvynol. Dixon was convicted on all five counts and sentenced as an habitual criminal to serve a term of three years as to count one; three years as to count two; three years as to count three; one year in the county jail as to count four; and one year in the county jail as to count five. The sentences were to run consecutively with no reduction, suspension, or eligibility for parole or probation.
On this appeal, Dixon assigns seven errors:
1. The indictment against the appellant was defective and the appellant's demurrer should have been sustained;
2. Controlled substances taken from the appellant's person should have been suppressed by the lower court;
3. Controlled substances taken from the appellant's automobile should have been suppressed by the lower court;
4. Statements made by appellant to police officer should have been suppressed by the lower court;
5. Introduction into evidence of certain syringes by the appellee were prejudicial to the appellant;
6. The involvement of the district attorney in the investigatory stages of this case subjected the appellant to a lack of protection of his constitutional rights;
7. Appellant's motion for a directed verdict should have been sustained by the lower court.
In April 1982, Police Officer John Johnson and Highway Patrolman Jerry Butler were investigating a burglary of the Plaza Drug Store in Winona. On April 29, at approximately 10:30 p.m., Butler phoned Johnson and advised him a reliable source had informed him that Randy Dixon had possession of some of the stolen substances in a brown paper bag in a closet at Dixon's home.
Afterward Johnson, Butler, and Montgomery County District Attorney Ed Snyder met at the police department and, according to Johnson, "started to work on the affidavit." When it was completed, Butler and Johnson signed the affidavit for search warrant before Donald Bond, the City Judge of the City of Winona. Bond then issued a search warrant authorizing the search of Dixon's house and any vehicles on the property.
Johnson and Butler arrived at Dixon's residence approximately 5:30 a.m. on April 30. Randy Dixon answered Johnson's knock. When Johnson stepped inside, Randy's brother, Stanley Dixon, came into the room. Johnson then informed both men he had a search warrant for the house. Immediately afterward Randy reached into his right front pocket. Johnson testified, "At that time I grabbed his hand and told him to let me see what he had. At that time ... I found some tablets that I believed to have been controlled substances." Johnson then placed Randy under arrest. According to Johnson, Randy made a statement to the effect of "Oh, you're not going to charge me with these."
Johnson testified, "At that time I told him not to say anything to him until I'd had a chance to advise him of his rights. I also told him to step over to the kitchen table and to take everything out of his pockets." After Randy complied, Johnson gave him his Miranda warning. Johnson also told Randy the officers "did not want to ask him any questions and would rather that he would sit down and not make any statements ..."
However, Randy made several comments as the officers conducted the search of the house. First, he told him they were not going to find anything. Later when Johnson found three ampules of the substance labeled Demerol in Randy's dresser drawer, Randy stated, "I bought that with my own money. I paid for that." According to Johnson, Randy attempted to retrieve *1095 the vials of Demerol and continued to assert ownership of them.
Johnson testified Randy appeared to him "to be under the influence somewhat of drugs or alcohol." Although his speech was not slurred and he was not staggering, Randy looked pale and "somewhat relaxed," seeming "to be coming out from under the influence of something, more than at the point of a real peak high." Nevertheless, Randy appeared to understand his Miranda rights.
Randy's brother, Stanley, testified that on the morning of the arrest Randy was "kind of groggy and slurry in talk and everything" and "acted like he was in ... another world." This led Stanley to believe Randy had been taking drugs.
Following his arrest Dixon announced he wanted to get some cigarettes out of his car parked in the driveway. Officer Charlie Brown escorted him outside and stood beside the back door of the car while Dixon looked under the floor mat. Brown testified, "Well, he disturbed the floor mat, and I noticed a white tip of something showing under the gas pedal ..." Dixon returned to the house, leaving Brown at the car. Having discovered some capsules underneath the accelerator pedal, Brown called Officer Butler for assistance. Butler removed the capsules, which were introduced into evidence at trial.
The officers took Randy to the police department at approximately 7:00 a.m. There he again stated he understood his rights. At this time he said he did not want to make a statement before talking with his attorney.

I. SHOULD THE COURT HAVE SUSTAINED DIXON'S DEMURRER TO THE MULTI-COUNT INDICTMENT?
We have recently decided four cases concerning this issue. The first, Stinson v. State, 443 So.2d 869 (Miss. 1983), involved a defendant charged with (1) aggravated assault upon a law enforcement officer, (2) kidnapping, and (3) attempted escape from the Department of Corrections by violence. We noted these were "three separate offenses, each carrying different penalties and having different elements constituting the crimes." 443 So.2d at 873. Having reviewed prior case law on this point, we concluded Stinson's multi-count indictment was improper.
Supporting this holding were several early cases. First, State v. Rees, 76 Miss. 435, 22 So. 829 (1898), held the trial court was within its discretion in sustaining defendant's demurrer to an indictment charging "two distinct felonies of different degrees and different punishments."[1] 76 Miss. at 437, 22 So. at 829.
Twenty-five years later this holding was reaffirmed in McEwen v. State, 132 Miss. 338, 96 So. 690 (1923), which involved a multi-count indictment charging defendant with forcible rape and with carnal knowledge of an "unmarried female person of previously chaste character younger than himself, and over twelve and under eighteen years of age ..." 132 Miss. at 343, 96 So. at 691. Citing State v. Rees, the court stated,
The two felonies charged in the indictment differ materially, both in their elements and their punishments, and consequently the court below should have either sustained the demurrer to the indictment in whole or to one count, or have compelled the state to elect on which count the appellant should be tried. (Emphasis added.)
132 Miss. at 344, 96 So. at 691.
*1096 A third case, Woods v. State, 200 Miss. 527, 27 So.2d 895 (1946), held the trial court had improperly allowed the state to consolidate for trial the three alleged crimes of (1) exhibiting a deadly weapon, (2) carrying a concealed weapon, and (3) assault and battery with fists. The court noted first that the three crimes contained different elements. The effect of consolidation was
[t]he accused had to be prepared to meet evidence of three distinct crimes, where much of the evidence as to one was not competent as to the others. Certainly the accused was confounded in his defense and evidence was introduced before the jury which would not have been competent upon separate trials.
200 Miss. at 534, 27 So.2d at 897.
Approximately one month after Stinson was decided, we followed it to hold defective an indictment which charged a defendant with kidnapping, rape, and two other crimes.[2]Friday v. State, 462 So.2d 336, 338 (Miss. 1985). Shortly thereafter, we applied the same rule to a two-count indictment charging aggravated assault and armed robbery. Bennett v. State, 451 So.2d 727 (Miss. 1984). Our third post-Stinson case on this issue, Johnson v. State, 452 So.2d 850 (Miss. 1984), held improper a two-count indictment charging grand larceny and automobile burglary.
As stated earlier, Dixon was charged in a single indictment with five counts of possession of controlled substances. Although at first glance the above cited cases may appear to require vacation of four of the five sentences imposed, we are of the opinion that this case contains a crucial factual distinction. While Stinson, its predecessors and progeny all involved multi-count indictments for different felonies with various elements, the five crimes charged in Dixon's indictment have essentially the same components.
Mississippi Code Annotated, Section 41-29-139(c) provides:
It is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article. (Emphasis added.)
Thus this statute makes illegal the possession of a controlled substance regardless of its classification. The elements of the crime are (1) knowing or intentional possession of the controlled substance, (2) obtained without a valid prescription or order of a practitioner in the course of his professional practice.
Dixon was charged with and convicted of possessing five controlled substances: (1) methaqualone (Lemon's Quaalude); (2) meperidine (Winthrop's Demerol); (3) secobarbital (Lilly's Seconal); (4) diazepam (Roche's Valium); and (5) ethchlorvynol (Abbott's Placidyl). Substances one through three are classified as Schedule II controlled substances, possession of which is punishable by three years imprisonment or a fine of $30,000.00 or both. Mississippi Code Annotated, Section 41-29-139(c)(1). Substances four and five are classified as Schedule IV, possession of which is punishable by one year in the county jail or a $5,000.00 fine or both. Mississippi Code Annotated, Section 41-29-139(c)(3). Besides these differences, the elements of each of the five crimes are the same: the knowing or intentional possession of a controlled substance obtained without a valid prescription. The only variation is the punishments prescribed for possession of Schedule II and Schedule IV controlled substances.
We are of the opinion the foregoing distinction provides an exception to the rule announced in Stinson. As previously stated, the essential elements of the crimes are the same, the only difference being in the maximum sentences. Our research has revealed no case reversed simply because the charges carried different punishments. In *1097 our opinion under the facts of this case, to require separate trials for each charge would be a waste of judicial time and public money. However, we reach our decision not because of this factor alone but because we are of the opinion this case is crucially distinguishable from Stinson and related cases.
We therefore hold the trial court did not err in allowing the state to proceed on a five-count indictment where the crimes had the same elements and proof and arose from the same transaction or occurrence. We note further that although the two groups of charges carried different maximum punishments, the trial court recognized this by sentencing Dixon separately on each conviction.

II. SHOULD THE LOWER COURT HAVE SUPPRESSED CONTROLLED SUBSTANCES TAKEN FROM DIXON'S PERSON?
The tablets at issue here were taken from Dixon's person immediately after the officers informed him they had a warrant for his arrest, after Dixon made a sudden reaching motion toward his front right pocket. We are of the opinion the search was prompted by the urgency of this situation and was therefore authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held,
When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. 392 U.S. at 24, 88 S.Ct. at 1881.
We therefore conclude proposition II is without merit.

III. SHOULD THE LOWER COURT HAVE SUPPRESSED CONTROLLED SUBSTANCES TAKEN FROM DIXON'S AUTOMOBILE?
We observe the warrant authorized the search of Dixon's house "together with all approaches, vehicles and appurtenances thereto." Therefore, we are of the opinion the capsules removed from Dixon's car were not the fruit of an illegal search and were properly admitted at trial.

IV. SHOULD THE LOWER COURT HAVE SUPPRESSED STATEMENTS MADE BY DIXON TO POLICE OFFICERS?
Dixon challenges the admission of several spontaneous statements made by him prior to and during the search. It should be noted police officers did not elicit these statements; they were made voluntarily.
We have held many times that "a volunteered statement, voiced without prompting or interrogation, is admissible in evidence if made prior to the warning and of course if it were voluntarily and spontaneously made subsequent thereto, it would remain admissible in evidence." Burge v. State, 282 So.2d 223, 226 (Miss. 1973). Accord, Neal v. State, 386 So.2d 718 (Miss. 1980). The Burge opinion went on to emphasize that "officers in the presence of a suspect, either prior to arrest or thereafter, are not required to turn a deaf ear to the voluntary utterances of such person ..." 282 So.2d at 226-27.
Dixon's argument relies primarily on the premise that he was under the influence of drugs at the time the statements were made. However, Officer Johnson testified Dixon appeared to understand his Miranda rights. We therefore conclude the trial court committed no error in admitting these statements.

V. SHOULD THE TRIAL COURT HAVE ALLOWED THE INTRODUCTION OF CERTAIN SYRINGES INTO EVIDENCE?
During the search of Dixon's bedroom officers discovered a syringe in the trash can and another in the top dresser drawer. Both syringes, which contained trace amounts of meperidine, were later admitted into evidence over Dixon's objection.
*1098 Dixon now contends that since other exhibits contained meperidine, the syringes lacked probative value and served only to inflame the jury against him. However, it is well settled that the paraphernalia used in the commission of an offense may be admitted into evidence. Russell v. State, 391 So.2d 987 (Miss. 1980); Wilkins v. State, 264 So.2d 411 (Miss. 1972). Therefore our opinion is there is no merit in this assignment of error.

VI. DID THE INVOLVEMENT OF THE DISTRICT ATTORNEY IN THE INVESTIGATORY STAGES OF THIS CASE CONSTITUTE REVERSIBLE ERROR?
Citing Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947), Dixon argues District Attorney Ed Synder should have recused himself from the trial due to his involvement in the investigatory process of Dixon's case.
Adams involved a district attorney who appeared before a justice of the peace and on his affidavit secured a warrant to search Adams' home. The court stated further facts as follows:
Armed with this search warrant, and a copy thereof, the district attorney sought and obtained the company of a deputy sheriff, to whom he gave only the copy, retaining the original himself. Thereupon, he, accompanied by the deputy raided the premises of Minnie Adams, the appellant. On the trial of the case, the district attorney introduced the deputy and himself as the sole witnesses for the state. 202 Miss. at 72, 30 So.2d at 595.
The deputy sheriff testified he did not serve the warrant on Adams, nor did he tell her he had it. The district attorney testified he retained the original warrant and that he did not know what the deputy sheriff did with the warrant.
In our opinion this case is distinguishable from Adams on several points. First, District Attorney Snyder did not testify at Dixon's trial. Second, Snyder did not participate in the search but merely remained available outside the house in case the officer should need him to answer legal question. Finally, the affidavit was not Snyder's alone but was the product of a cooperative effort among the district attorney and Officers Butler and Johnson.
While it would be good practice for the district attorney as a quasi-judicial officer to refrain from involving himself in the investigatory phase of a case, we do not think Adams mandates reversal for Snyder's minimal activity in the pre-arrest stage of this case.

VII. DID THE LOWER COURT ERR IN OVERRULING DIXON'S MOTION FOR DIRECTED VERDICT?
In our opinion a sufficient disposition of this assignment of error is our acknowledgment that in view of the facts previously discussed there is ample evidence supporting the jury's verdict of guilty on all five counts.
We have considered Dixon's arguments and concluded they are without merit. The judgment will be affirmed.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., concurs as to sections II-VII.
ROBERTSON and ANDERSON, JJ., specially concur as to section I.
ROBERTSON, Justice, specially concurring:
I agree with the result reached in the majority opinion in Section I, pages 1095-1097, to the effect that the trial judge did not err in allowing the state to proceed on a five-count indictment under the facts and circumstances of this case. I do not agree, however, with the majority's rather tortured effort to distinguish this case from our several recent multi-count indictment cases, Stinson v. State, 443 So.2d 869 (Miss. 1983); Bennett v. State, 451 So.2d 727 (Miss. 1984); Johnson v. State, 452 *1099 So.2d 850 (Miss. 1984); and Friday v. State, 462 So.2d 336, 338 (Miss. 1985).
I would unequivocally modify the rule announced in Stinson and progeny. I would have the Court adopt a rule to this effect: All charges arising out of the same transaction or occurrence may be lodged in a single, multi-count indictment. On the other hand, charges against a defendant arising out of separate transactions or occurrences charged to have taken place at separate times must be brought under separate indictments.
In cases where all charges arise out of the same transaction or occurrence and where, in my view, a multi-count indictment would be proper, the trial judge would retain discretionary authority to sever for trial the various counts in a multi-count indictment if such were necessary to avoid undue prejudice to the accused or were otherwise in the interest of justice. See Rule 4.04, Uniform Criminal Rules of Circuit Court Practice.
To this end and to this extent, I recant my opinion in Johnson v. State, 452 So.2d 850 (Miss. 1984), and my votes with the majority in Stinson, Bennett, and Friday. See Ward v. State, 461 So.2d 724, 726 (Miss. 1984).
Beyond these thoughts, I join sections II through VII of the majority opinion and join in the affirmance of the judgment below.
ANDERSON, J., joins in this opinion.
NOTES
[1] Rees was indicted for the violation of Section 1063 and Section 1066 of the Code of 1892. Section 1063 prohibited certain government officers and persons exercising public employments from converting to their own use any money or other valuable things coming into their hands by virtue of their office or employment. Maximum punishment for violation was imprisonment in the penitentiary for twenty years, a $100,000.00 fine, or imprisonment in the county jail for one year. Section 1066 provided, "If any officer, or other person employed in any public office, shall commit any fraud or embezzlement therein, he shall be imprisoned in the penitentiary not more than ten years, or in the county jail not more than one year, or be fined."
[2] Under a four-count indictment Friday was tried for only kidnapping and rape.