472 So.2d 373 (1985)
Cheryl Cheatham BRECKENRIDGE and James (Sonny) Breckenridge
v.
STATE of Mississippi.
No. 55534.
Supreme Court of Mississippi.
June 5, 1985.
*374 Helen J. McDade, Lowry C. Edwards, McDade & Edwards, DeKalb, Charles R. Brock, Louisville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser O. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and ROBERTSON and ANDERSON, JJ.
*375 ANDERSON, Justice, for the Court:
This appeal is from a conviction rendered in the Circuit Court of Kemper County wherein appellants were convicted of five counts of possession of controlled substances with intent to sell and sentenced to five consecutive three-year sentences and payment of $5,000 fine each.
On January 3, 1983, Robert Alexander, an agent with the Mississippi Bureau of Narcotics, was contacted by a confidential informer who gave him information leading him to believe there was probable cause for a search warrant of Breckenridges' house trailer. The confidential informer supplied him with specific information concerning the selling of drugs from the trailer and took the agent to the location of the trailer. At the time, appellant Cheryl Breckenridge was living with appellant James Breckenridge; they have subsequently been married.
After leaving the Breckenridge's trailer, Agent Alexander returned to Meridian and typed an affidavit and wrote out the underlying facts and circumstances in support of it. Around 1:30 a.m. on January 4, 1983, Agent Alexander, accompanied by five other agents, went to Judge Vernon Myers' home in Neshoba County to get a search warrant. Judge Myers signed the search warrant, after placing Agent Alexander under oath and questioning him as to the underlying facts.
The Bureau of Narcotics agents contacted the local sheriff and they met at Judge Myers' home. The sheriff notified the agents that the trailer as described was not located in Neshoba County, but was in Kemper County. Since the agents did not know any judges in Kemper County, Sheriff Phillips directed Agent Alexander to Judge George Smith's residence. While Agent Alexander was obtaining a second search warrant, the five other agents drove to the appellants' trailer. Shortly before 2:00 a.m., Agent Alexander presented Judge Smith with the affidavit of the underlying facts and circumstances, as well as the search warrant. Judge Smith put Alexander under oath, at which time Alexander went over the underlying facts. Judge Smith reviewed the affidavit for search warrant, but did not read all the underlying facts and circumstances. Judge Smith determined that there was probable cause for the search warrant and issued it.
Once the warrant was obtained, Agent Alexander radioed the other agents and informed them that he had obtained the warrant. The other agents proceeded to the trailer and observed activity inside. An agent knocked on the door and stated, "State Narcotics, open up." After stating this several times and knocking on the door loudly, and getting no response from the appellants, the agents broke the door down with a sledge hammer.
Upon entering the trailer, the Narcotics Agents were confronted by appellant, Sonny Breckenridge, naked, aiming a pistol at the officers. The officers pointed their pistols at him and convinced him to drop his gun. They secured the premises for safety and brought appellant, Cheryl Breckenridge into the living room. A green leafy matter, which they presumed to be marijuana, was in plain view in the living room. An agent informed them of their rights and placed them under arrest for violation of Mississippi Code Annotated, Section 41-29-139 (1972). The sheriff arrived with Agent Alexander while this procedure was taking place.
The items seized from the trailer consisted of 14 different drugs, receipt and address books, $9,734 in cash, triple beam scales, plastic bags containing marijuana, hand-rolled marijuana cigarettes, a rolling machine and various guns and knives.

POINT I.

THE EVIDENCE SHOULD NOT HAVE BEEN ADMITTED SINCE IT WAS THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE.
The appellants contend that there was insufficient probable cause in the "underlying facts and circumstances" for Justice Smith to issue a warrant. An examination *376 of the pertinent parts of the underlying facts and circumstances document reads as follows:
On or about the 4th day of January, 1982, (sic 1983), I was contacted by a confidential informant who had provided information about drugs in the Lauderdale-Neshoba County area in the past, which information had proved to be true and correct.
The informant stated that he had visited Sonny for the purpose of purchasing drugs approximately four to five times a week for the last five months. Each visit resulted in the purchase of a least six dilaudid ...
In the past week (December 27, 1982, to January 3, 1983) the informant has been to Sonny's residence four times and purchased a total of 24 mgms. Dilaudid for a total of $1,080.
Appellants rely upon the case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Aguilar/Spinelli test requires that the affiant establish the reliability of the informant by showing:
(1) prior use and reliability of the informant,
(2) a declaration by the informant against his penal interest; and
(3) clear and precise details of the tip indicating personal observation and the knowledge of the location of the evidence.
A reading of the foregoing excerpts from the underlying facts and circumstances establishes that the confidential informant demonstrated both a personal knowledge of the location of the evidence and a declaration against his interest. Further, Agent Alexander swore that he had given reliable information on drug activity in the past.
We have faithfully enforced the two-pronged test of Aguilar and Spinelli. That test has been supplanted by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), wherein the United States Supreme Court established a "totality of the circumstances" approach. Under Gates the magistrate issuing the warrant is to take a practical, common-sense approach of whether, given all the circumstances set forth in the affidavit before him, including veracity and basis of knowledge of the person supplying the information there is a fair probability that contraband or evidence of crime will be found in a particular place. The duty of a reviewing court is to insure that the magistrate had a substantial basis for concluding that probable cause existed.
In Lee v. State, 435 So.2d 674, 675 (Miss. 1983), we accepted the "totality of the circumstance" approach for determining whether probable cause exists. More recently in Jimmy Stringer v. State, No. 54,805 (decided, and not yet reported), we again accepted the new analysis.
The Aguilar-Spinelli test for probable cause was a federal test, obligatorily enforced by the states when rights secured by the Fourth and Fourteenth Amendments to the United States Constitution were at issue. That federal standard has now given way to the totality of the circumstances test. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
While we had full authority to continue to construe "probable cause" within section 23 of our own Constitution in accordance with the Aguilar-Spinelli two-pronged test, we have not done so. Lee v. State, 435 So.2d 674, 676 (Miss. 1983); Hall v. State, 455 So.2d 1303, 1308-09 (Miss. 1984). We perceived the practical reality that there may be many cases in which the evidence on one prong or the other of the Aguilar-Spinelli test might be meager but where, considering the totality of the circumstances presented to the magistrate, probable cause was evident. Accordingly, in Lee v. State, 435 So.2d 674 (Miss. 1983), we accepted the new "totality of the circumstances" analysis for determining whether probable cause exists whether the question arises under our state or federal constitution.
*377 In the case at bar, based upon Agent Alexander's sworn testimony and the evidence presented, under the Gates test and our recent announcements in Lee and Stringer, Judge Smith could conclude that there was sufficient evidence to issue a search warrant. Therefore, we see no merit in this assignment of error.

POINT II.

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO WITHHOLD THE IDENTITY OF THE CONFIDENTIAL INFORMANT.
The appellants contend that the trial court erred in failing to disclose the identity of the confidential informant. This Court has recognized the value of the informer's role in law enforcement and has developed an "informer's privilege," which enables the prosecution to withhold the informant's identity. Strode v. State, 231 So.2d 779 (Miss. 1970); Pace v. State, 407 So.2d 530 (Miss. 1981). In order for the trial court to require the identity of an informant be revealed, he must have been a participant in the crime or an eye witness to the offense which would cause the confidential informant to become a material witness.
Here the confidential informant gave information concerning the purchase of drugs from appellants, as well as possession of newly acquired quantities of drugs by the appellant. The confidential informant was not a co-conspirator intending to sell the drugs, nor a material witness to the offense of the intent to sell. Further, there is no indication that the confidential informant was present when the officers searched the appellants' home.
We have held that the disclosure of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. Young v. State, 245 So.2d 26 (Miss. 1971); and Strode, supra.
As we pointed out in Daniels v. State, 422 So.2d 289 (Miss. 1982):
If a reliable informant tells officers, "if you go to point X you will find evidence," the identity of the informant may be withheld. On the other hand, if the informant comes with me and says, "I will help you catch the suspect," and takes part in the police activity, or if the informant becomes a witness to the facts constituting a crime, he becomes a witness who may be required to appear at trial.
Unquestionably, the former not the latter is what took place in the instant case. The trial judge abused his discretion in not disclosing the confidential informant's identity. This assignment of error is without merit.

POINT III.

THE EVIDENCE WITH REGARD TO COUNT IV OF THE INDICTMENT WAS INSUFFICIENT.
Appellants contend that the verdict of guilty on Count IV of the indictment is against the overwhelming weight of the evidence. Count IV of the indictment concerns the possession of valium with the intent to distribute. The valium discovered was among 17 pills and capsules in a bottle. The other pills and capsules in the bottle were antibiotics. James Breckenridge has a spinal degenerative arthritis, is diabetic, has chronic bronchitis and has back problems. The appellant called as a witness Dr. Keyes, who has treated Mr. Breckenridge for twenty years for these problems, testified that he had given Breckenridge a prescription for valium. Dr. Keyes testified that he had treated Breckenridge for various illnesses since 1962 and stated that he prescribed 60 tablets of valium with one refill in July of 1982. In September of 1982 he stated he gave Breckenridge a prescription for 100 valium with five refills.
It is the state's contention that the appellant did not prove the valium seized was the valium that had been prescribed by the doctor. This places a heavy burden on the appellant. It would seem to be impossible for Breckenridge to show that the valium seized was actually what he purchased by prescription. Although this Court is *378 reluctant to disturb a jury's factual findings, under the circumstances of this case, we find that the state failed to meet its burden of proof with regard to the unlawful possession of valium with intent to distribute. We reverse and render as to both appellants with regard to Count IV of the indictment.

POINT IV.

THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY OF INTENT TO DELIVER ON COUNTS VII AND VIII OF THE INDICTMENT.
It is the appellants' contention that the prazepam, hash and hash oil that was seized was of such a small quantity that it did not justify a verdict of guilty of possession with intent to sell the substances.
The appellants rely on Bryant v. State, 427 So.2d 131 (Miss. 1983), wrerein a law enforcement officer approached a man outside a bar, arrested him for public drunkenness, and patted him down, finding 55 quaaludes and 85 valiums in his pocket. We reversed this conviction of possession with intent to deliver and remanded for resentencing for possession alone. The instant case is factually distinguishable from Bryant in many respects. In addition to the prazepam, hash and hashoil that were found, there were numerous other drugs found along with an address book, a cash receipt book (with reference to large money transactions), $2,089 which was found in Mrs. Breckenridge's purse, along with an envelope that contained $4,600. Mr. Breckenridge's wallet contained $2,885 and also seized was a gun case which contained a gun and $160.
When we consider this evidence in the light most favorable to the state and all reasonable inferences that may be drawn from that evidence, we will not disturb a jury's verdict that these defendants did, in fact, intend to sell contraband.

POINT V.

THE MULTICOUNT INDICTMENT USED AGAINST THE APPELLANTS WAS IMPROPER AND THEREFORE REQUIRES REVERSAL.
It is their contention that their motion to sever should have been granted because multi-count indictments are unauthorized except in a very few clearly defined situations and further, they point out that six of the counts against them concern intent to sell, while three concern possession alone.
Multi-count indictments have long been a subject of discussion and controversy in this state, however, our recent case of Dixon v. State, 465 So.2d 1092 (1985), not yet reported, presented a detailed discussion of such indictments and finally resolved this question. Dixon was charged in a single indictment with five counts of possession of controlled substances. We pointed out that under MCA § 41-29-139 (1972), possession of controlled substances, regardless of classification, involves two elements; the knowing and intentional possession of controlled substances and the lack of a valid prescription. We went on to hold in Dixon that:
... [T]he trial court did not err in allowing the state to proceed on a five-count indictment where the crimes had the same elements and proof and arose from the same transaction or occurrence. We note further that although the two groups of charges carried different maximum punishments, the trial court recognized this by sentencing Dixon separately on each conviction.
We see no merit in this assignment of error.

POINT VI.

THE TRIAL COURT ERRED IN ALLOWING A CONSTRUCTIVE POSSESSION INSTRUCTION.
Appellants contend that they were denied a fair trial and due process of law because the state was granted Instruction S-9. Instruction S-9 reads as follows:

*379 To constitute a possession there must be sufficient facts to warrant a finding that defendants were aware of the presence of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession; constructive possession may be shown by establishing that the substance involved was subject to the defendants' domain or control.
Mississippi has followed the general rule that where contraband is found on the premises of which the defendant is in possession and control, an inference can be drawn that the contraband is within the possession of the owner of the premises. Powell v. State, 355 So.2d 1378 (Miss. 1978); Martin v. State, 413 So.2d 730 (Miss. 1982). In Wood v. State, 322 So.2d 462 (Miss. 1975), we approved an identical instruction to S-9 where amphetamines were found in the defendant's apartment and the jury found that he was in constructive possession of the narcotic.
The record in this case establishes that the appellants lived in the trailer and that it was within their dominion and control. Whether the contraband found in the appellants' trailer belonged to the appellants was a question of fact for the jury to determine. When we consider all the facts in a light most favorable to the state, together with reasonable inferences therefrom, we cannot say that this verdict was against the overwhelming weight of the evidence. We find no error in the trial court granting the state instruction S-9.
We have considered the appellants' other assignments of error, and find that they are without merit. For the reasons stated, the judgment of the lower court is affirmed, in all respects except for Count IV of the indictment which we reverse and render as to both defendants.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.