483 So.2d 358 (1986)
Leonardo BROCK
v.
STATE of Mississippi.
No. 55245.
Supreme Court of Mississippi.
February 12, 1986.
Jack R. Jones, III, Taylor, Jones, Alexander, Greenlee, Seale & Ryan, Southaven, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., HAWKINS and ROBERTSON, JJ.
HAWKINS, Justice, for the Court:
Leonardo Brock appeals from his conviction in the circuit court of Desoto County under a three-count indictment charging him with the crimes of robbery, kidnapping and rape.
He first assigns as error cross-examination about his pre-trial silence, which we find to be without merit under the facts of this case.
We agree with his contention that it was error to try him under a multi-count indictment and reverse.

*359 FACTS
Around 7:00 a.m. on Saturday, June 5, 1982, Thomas Pierce and Charles Crouther, summer employees as Park Rangers for the U.S. Corps of Engineers, were flagged by Brock on one of the Arkabutla Lake roads. Brock asked for assistance to get a two-door maroon Chevrolet out of a ditch. The car was at right angles to the ditch, with both back wheels in the ditch's bottom. Pierce told Brock they would be unable to pull the car out with the truck, but approximately a mile away at a country store the owner had a tractor, and they would take him there.
In the course of the conversation, Brock told them that the car was his, that he had been in the area fishing, and that he was a lawyer from Memphis.
The three got into the truck and when they had driven about 150 yards, Pierce testified they saw Jacqueline Dennis, a black woman, sitting on the side of the road. She was nude from the waist up, holding a torn blouse, and flagging them. The rangers stopped, asked her what was the matter, and Dennis told them she had been raped and shot, then pointed at Brock, and said, "That's the one that did it right there."
The rangers had no weapons, and when Pierce told Crouther to radio the DeSoto County Sheriff's Office, Brock ran off.
At trial Dennis testified that shortly after mid-night, around 12:30 a.m., on June 5, she had gone to the "Barracks Club," an establishment at the corner of Monroe and Marshall streets in the City of Memphis. Dennis, 22 years of age, was a student at Memphis State University, who worked part-time. The Barracks Club is located in a section of Memphis the city fathers are unlikely to boast about.
According to Dennis, while she was playing a video game, Brock approached her, they struck up a conversation, he told her he was a medical student and that his name was "Rick." As she was about to leave, he told her his car had been stolen, and she advised him to call the police. He made the motion of making a call on the telephone, and told her that his car had not been stolen, but the police had taken it in because it was parked near a fire plug.
She agreed to take him to his apartment, and said they first made a stop at the City of Memphis Hospital, where Brock said he wanted to check and see if the Director's car was there.
When they got to his apartment, Brock invited her to come in and meet his female roommate, who he said was also a medical student.
She went into his apartment. Once inside the apartment, Brock grabbed her by the hair and at gunpoint made her undress. He momentarily went into the kitchen. Dennis got a vase close by to hit him with. Upon returning, Brock saw the vase, slapped her around, and told her that if she tried anything he would kill her, that he had already killed another lady.
Brock had sexual intercourse with her and oral sex. After threatening to kill her in the apartment, he ordered her to dress herself and at gun and knife point made her get into the car which he drove to Mississippi. He came to a dead end of the park road, went to turn the car around and got stuck in the ditch. He made her walk up the road, then ordered her off the road into a thicket. Again he ordered her to undress and had sexual intercourse with her, oral sex and anal sex.
Brock then stuffed Dennis's blouse in her mouth, made her get on knees and put her arms behind her back. He moved behind her and shot her. She then heard the pistol snap two or three times.
Brock left, and after lying there for a time, she managed to put part of her clothes on and dragged herself to an embankment at the road's edge, where she was found. She was taken to the hospital and hospitalized for nine days.
On cross-examination Dennis testified the Barracks Club was an establishment frequented by homosexuals. She also conceded an inducement for her to go to *360 Brock's apartment was to smoke marijuana.

BROCK'S TALE
Brock told an entirely different story. He denied ever meeting Dennis at the Barracks Club. According to him, he met her the previous Wednesday, June 2, at a street corner outside the Shelby County Courthouse. He was employed at the time by Target, a retail chain store, and worked part-time for the Acue Bonding Company. The two struck up a conversation, Dennis was interested in securing a bail bond for a friend, and he took her for a beer and a mid-afternoon meal at a local restaurant. Dennis was also interested in selling some marijuana to help her finance the bail bond for her friend. The next day, Thursday, she called him at Target's and later in the day met him at his apartment. She stayed there while he went to the Acue Bonding Company. Later that night he ran into his girl friend, Renee Hale, at a convenience store, who told him she had found Dennis in the apartment, and a verbal rhubarb ensued between Brock and Hale, which required police intervention to quiet. He said he returned to the apartment and told Dennis she had to leave.
He next saw Dennis around midnight Friday night at the Courthouse. She and a white woman named "Robin" were together. They wanted him to get some drugs for them, and agreed to take him by his apartment.
The three went to his apartment, Robin dozed off to sleep, and he and Dennis had sexual intercourse. Dennis told him she and Robin had a homosexual relationship.
Robin awoke, found the two in bed together, and a loud argument ensued. He eventually quietened them down.
He decided to go with Dennis to take Robin home. Brock drove, Robin was in the front seat, and Dennis in the back. They eventually got to the Arkabutla Road. Robin began to cut him with a knife and he drove off into the ditch. Robin pulled a revolver from under the seat (which belonged to Brock), and he escaped into the woods. He heard some shots.
A short while later he returned to the car and found his pistol lying by the side of the car. He put it under the car seat. He was walking down the road when Pierce and Crouther drove up.
Brock admitted running off when Dennis identified him.
Renee Hale testified for Brock that she had seen a woman in his apartment that previous Thursday night and that because of this, she and Brock had a hot argument later that night at a convenience store in Memphis. She testified that she had seen the woman in the apartment during the trial at the DeSoto County Courthouse, that she had seen her in the lady's room and in the state witness room, and that the woman was wearing a two-piece beige suit.
Defense counsel then stated into the record that Dennis was wearing a suit such as Hale identified when she testified. No attempt was made by the defense to have Hale identify Dennis in the courtroom.
On June 22, 1982, the grand jury of DeSoto County returned a three-count indictment against Brock. Count I of the indictment charged him with the felonious taking of a 1976 Chevrolet belonging to Dennis by putting her in fear of her life with a .22 caliber pistol, in violation of Miss. Code Ann. § 97-3-79 (1972), which is the Mississippi robbery statute. Count II charged him with feloniously seizing and confining Dennis against her will in violation of Miss. Code Ann. § 97-3-53, a kidnapping statute. Count III charged him with rape in violation of Miss. Code Ann. § 97-3-65. The robbery count was amended during trial to show that the automobile belonged to the parents of Dennis.
Brock was also charged with aggravated assault in shooting Dennis, but upon motion of the defense the state agreed to dismiss this indictment because the state agreed with the defense that aggravated assault was a lesser included offense of robbery.
*361 Brock was convicted of all three counts and sentenced to ten years imprisonment on each count.

IN THIS CASE WAS IT PROPER TO CROSS-EXAMINE ON PREVIOUS EXERCISE OF MIRANDA RIGHTS
Brock assigns as error his cross-examination and the rebuttal testimony about his pre-trial refusal to make a statement. Cross-examining a defendant about his failure prior to trial to make any statement to authorities about the facts surrounding the crime for which he is being tried has arisen in a variety of factual settings. In this case we deal with one narrow issue, the propriety of cross-examination of a defendant and rebuttal testimony about his remaining silent following a specific Miranda warning.[1]
Ordinarily such cross-examination would be prejudicial error. See: Austin v. State, 384 So.2d 600 (Miss. 1980); Doyle v. U.S., 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). As stated in Doyle, and by Justice Walker in his special concurring opinion in Cooley, Note 1, supra, it is unfair, after a law enforcement officer has specifically informed an accused of his right to remain silent and to have an attorney present before he makes any statement, to thereafter at trial attempt on cross-examination to impeach his credibility because he exercised a constitutional right about which he had been precisely informed.
It must be borne in mind, however, that the U.S. Supreme Court in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, held that a violation of a Miranda warning by law enforcement authorities could not be taken advantage of by the defendant who perjures himself at trial. Thus, even though a confession was inadmissible in the prosecution's case in chief because of a technical failure to fully comply with the Miranda warning, it could nevertheless be used on cross-examination to impeach a defendant who had testified contrary to facts he related in his confession.
Pertinent to our inquiry in this case is the following excerpt from Brock's cross-examination:
Q. Who are you trying to help out now, Mr. Brock?
A. I'm trying to bring out the truth in this case, because nobody ever asked me until now. I had a whole year and I want the truth to come out as to what exactly happened.
Q. Nobody ever asked you?
A. I haven't had anyone to come to me and ask me to make a statement at anytime since I've been in jail.
R.IV 450-451.
Following this the prosecution sought and was given permission to develop from Brock that he had been advised of his Miranda rights, had refused to make a statement and had even refused to sign and acknowledge receipt of the typed Miranda warning form in use by the DeSoto County sheriff's department.
Clearly, Brock, with no prompting by the state, on his own volition chose to mislead the jury into thinking no person had even asked him about the crimes for which he was charged. The state was entitled to challenge this statement which Brock made out of the clear blue sky.
The state would not be entitled to make any inference of guilt from Brock's decision to remain silent when questioned by the authorities, and did not attempt to do so in this case; the prosecution sought to prove nothing further from Brock's cross-examination and its rebuttal witness than that his testimony on direct examination above quoted was false. See: Murphy v. *362 State, 336 So.2d 213 (Miss. 1976), and Booker v. State, 326 So.2d 791 (Miss. 1976).

MULTICOUNT INDICTMENT
For the first time on appeal Brock assigns as error his trial and conviction on a three-count indictment. In Stinson v. State, 443 So.2d 869 (Miss. 1983), this Court held multicount indictments are not authorized in this state for separate offenses. See also: Bennett v. State, 451 So.2d 727 (Miss. 1984). In Johnson v. State, 452 So.2d 850 (Miss. 1984), even though the appellant did not assign as error his conviction under a multicount indictment, we applied Rule 6(b) of the Mississippi Supreme Court, the plain error rule, and reversed. In Ward v. State, 461 So.2d 724 (Miss. 1984) the defendant not only failed to object to a multicount indictment, but requested that he be tried under all counts. We held that it was proper in such as case to proceed to trial under all counts. In Dixon v. State, 465 So.2d 1092 (Miss. 1985), and Breckenridge v. State, 472 So.2d 373 (Miss. 1985), we upheld convictions under multicount indictments under offenses wherein the proof of each is essentially the same, the difference being only in the punishment.
Since there is nothing in this record which suggests that Brock requested he be tried under the multicount indictment, this case falls under the prohibition enunciated in Stinson.
We also hold that the entire proof in this record was relevant to and admissible under Count II, the kidnapping offense under Miss. Code Ann. § 97-3-53 (1972).
We therefore affirm Brock's conviction and sentence to ten years imprisonment under Count II, the kidnapping offense, and reverse under the remaining counts. Since we are reversing on the two remaining counts, we do not address the merits of Brock's assignment that he was entitled to a directed verdict on the robbery charge, Count I.
AS TO COUNT I: REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., DAN LEE, PRATHER and SULLIVAN, JJ., concur.
ROBERTSON and ANDERSON, JJ., dissent.
PATTERSON, C.J., specially concurs with Robertson, J.
AS TO COUNT II: AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ. and DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
ROBERTSON and ANDERSON, JJ., concur.
PATTERSON, C.J., specially concurs with ROBERTSON, J.
PATTERSON, Chief Justice, specially concurring:
I concur in the affirmance of this case on the kidnapping charge of the indictment.
It seems to me the other counts of the indictment, robbery and rape, are amply supported by the evidence and arose out of incidents so closely related in one criminal occurrence that they cannot be extricated one from the other. Since this is so, it is my opinion a single trial through a multicount indictment has some practical aspects that we should consider; namely, the conservation of judicial time and public expense.
With these thoughts and the reasons stated by Justice Robertson, I concur in his opinion.
ROBERTSON, Justice, concurring in part, dissenting in part:
I concur in all aspects of the opinion of the Court except that which reverses on the ground that Brock was tried and convicted on a three-count indictment. It is clear from the record in this case that the charges upon which Brock has been convicted  robbery, kidnapping and rape  all arise out of the same transaction or occurrence. For reasons I have heretofore articulated, I would hold that all such charges may be lodged in a single, multi-count *363 indictment. See Thomas v. State, 474 So.2d 604, 607-08 (Miss. 1985) (Robertson, J., concurring) and Dixon v. State, 465 So.2d 1092, 1098-99 (Miss. 1985) (Robertson, J., concurring).
In sum, I would affirm the judgment of the Circuit Court.
PATTERSON, C.J., and ANDERSON, J., join in this opinion.
NOTES
[1] Cooley v. State, 391 So.2d 614 (Miss. 1980), is an example of cross-examination about a non-Miranda warning pre-trial silence.

In Wainwright v. Greenfield, ___ U.S. ___, 106 S.Ct. 634, 88 L.Ed.2d 623, the United States Supreme Court has recently addressed another facet of the problem where, after exercising his Miranda rights, the accused pleaded insanity. The United States Supreme Court condemned the prosecution arguing as proof of sanity the accused's rationality in choosing to remain silent and asking to see a lawyer.