ROBERTS, J.,
dissenting:
¶ 13. I respectfully dissent. The majority concludes that the record “does not contain sufficient factual information to discern whether Thorpe’s conduct consti *901 tuted only one offense for felony possession of methamphetamine....” I disagree; therefore, I see no need in reversing the circuit court and ordering an evidentiary hearing. Assuming all Thorpe’s claims in his PCR petition and attached affidavits and exhibits to be true, established double-jeopardy jurisprudence indicates that two separate criminal offenses of possession of a controlled substance occurred in this case. First was the possession of methamphetamine in an amount of .1 gram or less; second was possession of methamphetamine in an amount of .1 gram but less than 2 grams.
¶ 14. Mississippi Code Annotated section 99-39-11(1) (Supp.2011) requires a circuit judge to promptly examine “[t]he original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attaek[.]” If the circuit judge concludes that it “plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the [circuit] judge may make an order for its dismissal and cause the petitioner to be notified.” Miss.Code Ann. § 99-39-11(2) (Supp.2011). Such an examination is equivalent to the inquiry under Mississippi Rule of Civil Procedure 12(b)(6): assuming everything in the complaint to be true, does the complaint state a claim upon which relief can be granted? In the current case, the circuit judge concluded:
The defendant was stopped on an outstanding warranty and ... the drugs which were the basis for the criminal information in 08-KR-0123-J were ingested and recovered. There were other drugs in defendant’s ear. [Thorpe] admitted this was correct. There is no basis for [Thorpe’s] assertion of double jeopardy or an unknowing or unintelli-gently entered plea.
I submit that the circuit judge was imminently correct in his legal conclusion that no double-jeopardy violation occurred.
¶ 15. First, it is significant to state exactly what the record in this case discloses. Thorpe filed his PCR petition on April 4, 2011. In his signed petition, Thorpe included two sworn affidavits signed by him. These affidavits set out, in detail, the underlying facts as claimed by Thorpe. Additionally, Thorpe attached numerous exhibits including, the following documents: (1) Michael Dossett’s statement[3]; (2) the Natchez-Adams Metro Narcotics Unit Case Report, including numerous exhibits; (3) Mississippi Crime Lab submission sheet for evidence, including the spoon, and the corresponding Mississippi Crime Lab analysis results sheet; (4) a second Mississippi Crime Lab submission sheet for the coffee filter and the corresponding Mississippi Crime Lab analysis results sheet; (5) the search warrant for Thorpe’s home; (6) photocopies of pictures taken showing evidence discovered; (7) a certified copy of Thorpe’s indictment in cause number 08-KR-0026-B, which involves the methamphetamine found on the spoon; (8) Thorpe’s medical record from the Natchez Regional Hospital; (9) a copy of Thorpe’s petition to enter a guilty plea to the indictment in cause number 08-KR-0026-B, involving the spoon; (10) a copy of the criminal information in cause number 08-KR-0123-J, involving the coffee filter; (11) a copy of Thorpe’s waiver of indictment in cause number 08-KR-0123-J; (12) Thorpe’s guilty plea and sentencing order in the two cause numbers; (13) Thorpe’s transcribed plea colloquy from *902 the Adams Count Circuit Court; (14) a copy of the circuit court’s order summarily denying Thorpe’s PCR petition.
f 16. Relying on the documents described above, it is necessary to provide additional facts in order to address Thorpe’s double-jeopardy claim. Thorpe and Dossett were friends and were together on the night of November 14 and early morning on November 15, 2007. Thorpe, a self-professed methamphetamine addict, had acquired a quantity of methamphetamine at Dossett’s home. Thorpe carried his methamphetamine in a coffee filter to preserve its flavor. He asked Dossett for a ride home, and Dossett agreed to drive him home. En route to Thorpe’s home, Thorpe used his “special spoon” to mix water with the methamphetamine in the coffee filter in order to consume the drugs. Unbeknownst to Thorpe, police had obtained a search warrant for Thorpe’s home and vehicle to search for methamphetamine and any paraphernalia or precursors necessary to manufacture methamphetamine. When police arrived at Thorpe’s home, he was not there; however, a person present in the home instructed officers that Thorpe was in a white Chevrolet truck belonging to Dossett. Police located Dossett’s truck and initiated a traffic stop right after Thorpe had begun mixing his methamphetamine. Thorpe saw the officers approaching the truck and hastily attempted to clean off the spoon using the coffee filter. He then swallowed the coffee filter and put the spoon in a black, nylon bag in the back of Dossett’s truck. Dossett consented to a police search of his truck in which police discovered Thorpe’s spoon with a milky substance dried, on the bottom. Thorpe admitted that the spoon was his. Police arrested Thorpe on an unrelated, pre-ex-isting shoplifting warrant and for the suspected drug residue found on the spoon. A subsequent search of Thorpe produced a syringe with a methamphetamine-like substance and other methamphetamine precursors and pills. Police transported Thorpe to the jail; however, before they arrived, Thorpe informed police that he had swallowed approximately four grams of methamphetamine and was feeling ill. He was taken by ambulance from the jail to the hospital where physicians administered vomit-inducing medication. At approximately 2:35 a.m., Thorpe regurgitated the coffee filter, and the police officer present took the coffee filter into evidence. At no point during the investigation did Thorpe provide the police with a formal statement. Dossett was given his Miranda warnings and agreed to have the police search his home. Police discovered precursor chemicals to manufacture methamphetamine in Dossett’s home. Dossett admitted that the chemicals were used by Thorpe to manufacture methamphetamine and that he and Thorpe had purchased the various precursors within the last five days. Police sent the evidence to the Mississippi Crime Lab where both the spoon and, later, the coffee filter tested positive for methamphetamine. The results sheet for the spoon was dated December 7, 2007; however, the results sheet for the coffee filter was not completed until over a month later on January 28, 2008.
¶ 17. On February 22, 2008, Thorpe and Dossett were jointly indicted in cause number 08-KR-0026-B in a three-count indictment charging them with the following: one count of possession of two or more precursor chemicals used in the manufacture of a controlled substance; one count of manufacturing a Schedule II controlled substance known as methamphetamine; and one count of possession of a quantity of Schedule II controlled substance known as methamphetamine in an amount less than .1 - gram. Thorpe was charged as a life-sentence habitual of *903 fender under Mississippi Code Annotated section 99-19-83 due to two prior felony convictions and sentences in Louisiana for attempted manslaughter and distribution of marijuana in Louisiana and two more felony convictions and sentences in Franklin County, Mississippi, for attempted theft of anhydrous ammonia and assault on a law enforcement officer. Thorpe was also under indictment for an unrelated case in cause number 07-KR-0134-A.
¶ 18. It appears from a reading of the record that Tim Cotton, Thorpe’s attorney, attempted to obtain a plea agreement disposing of all of Thorpe’s pending criminal charges. He was successful in doing so. In exchange for Thorpe’s pleading guilty to possession of the residue found on the spoon, waiving indictment for possession of the methamphetamine on the coffee filter, and pleading guilty to possession of the methamphetamine on the coffee filter, the State agreed to dismiss the other two counts in his indictment in cause number 08-KR-0026-B, dismiss an unrelated indictment in cause number 07-KR-0134-A, and significantly reduce the habitual offender charge to that under Mississippi Code Annotated section 99-19-81. Stated differently, instead of facing the possibility of receiving five mandatory life sentences as a habitual offender under Mississippi Code Annotated section 99-19-83, Thorpe could plead guilty under the agreement and reduce his possible maximum, mandatory prison sentence to twelve years (eight years for the coffee filter and four years for the spoon residue). In fact, Thorpe received only a total of ten years: eight years for the coffee filter and two years for the spoon residue. Of interest, Thorpe claims he was punished twice for the same offense of possession of methamphetamine, but in his PCR petition, he attacks the validity of only his coffee-filter possession which carried the longer eight-year sentence. Of further interest is that in Thorpe’s guilty-plea petition to the coffee-filter charge, he stated, under oath, that: “I believe that my lawyer is fully informed on all such matters. My attorney has advised me of the nature of the charge(s) and the possible defenses that I may have to the charge(s).” Obviously a valid double-jeopardy violation is a possible defense to the coffee-filter charge; yet Thorpe waived any such defenses when he agreed to plead guilty. Additionally, in Thorpe’s waiver of indictment and agreement to proceed on the bill of information, Thorpe stated, under oath, the following:
I am represented by ... counsel who has conferred with me and advised me as to the nature of the charge against me, and who has fully advised me of my rights regarding this charge, and I am freely and voluntarily executing this waiver with his approval and consent, and upon his advice.
In an almost comical conclusion to the plea colloquy before the circuit judge, we find this exchange between Thorpe and the circuit court:
THE COURT: Does the defendant have anything he cares to state either himself or through his attorney or anyone else?
THE DEFENDANT: Yes sir, I’d just like to apologize from coming back into your court again. I’ve been before you a few times and it seems like I just can’t keep from coming before you. I just want you to know — I just want to say that I didn’t plan to go and do this. I just got back on dope. I’m sorry. I appreciate you not giving me life. That’s all I have to say.
THE COURT: That’s what you were facing on one of these indictments.
THE DEFENDANT: I understand. I just — you know, I just wanted to apologize and thank you, and that’s all.
*904 ¶ 19. The double-jeopardy provisions of the United States Constitution and the Mississippi Constitution protect individuals from a second prosecution after conviction, a second prosecution after acquittal, or multiple punishments for the same offense. Thomas v. State, 711 So.2d 867, 870 (¶ 14) (Miss.1998). At issue in the current case is the double-jeopardy protection that prohibits an individual from being punished multiple times for the same offense. Thorpe’s primary argument is the sentence he received for the methamphetamine found in the coffee filter violated his constitutional right to be free from double jeopardy. He asserts that his charges arose from a single traffic stop and a single act of possession because he actually possessed only one amount of methamphetamine since the spoon residue and the amount on the coffee filter were from same source of methamphetamine. I disagree with Thorpe’s assertion and would find that there is no double-jeopardy issue in this case. The subsequent discovery of the methamphetamine in the coffee filter was after Thorpe was arrested, albeit only a few hours or less after the discovery of the methamphetamine on the spoon; therefore, these are two distinct possessions of two distinct amounts of methamphetamine.
¶ 20. When analyzing a double-jeopardy claim, Mississippi unequivocally applies the “same-elements” test outlined in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). “The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Id. at 304, 52 S.Ct. 180 (citations omitted). If the two offenses cannot survive the Blockburger test, then double jeopardy has been violated. I find that since this is not a double-jeopardy issue as Thorpe asserts, the same-elements test from Blockburger is not applicable.
¶ 21. I submit that Thorpe’s argument is better described as an issue of multiplicity. Multiplicity occurs when a single offense is charged in several counts leading to the possibility of multiple punishments for a single crime. This is precisely what Thorpe is arguing. Thorpe was first charged with the violation of Mississippi Code Annotated section 41-29-139(c)(l)(A) for the methamphetamine residue found on the spoon. Section 41-29-139(c)(l)(A) provides that “[i]t is unlawful for any person knowingly or intentionally to possess any controlled substance ... [in an amount] [l]ess than one-tenth (0.1) gram or one (1) dosage unit or less.... ” For the methamphetamine found on the coffee filter, Thorpe was charged with violating Mississippi Code Annotated section 41-29-139(c)(1)(B), which states: “It is unlawful for any person knowingly or intentionally ... to possess any controlled substance ... [in the amount of] one-tenth (0.1) gram but less than two (2) grams or two (2) dosage units but less than ten (10) dosage units.... ” Thorpe asserts that the weight of methamphetamine found on the filter and the methamphetamine residue found on the spoon should have been considered in the aggregate when charging him because the methamphetamine found on the spoon and the coffee filter were from the same original source. The elements of the crime in both charges would be the same under a Blockburger analysis because the charges stem from violations of the same statute; however, “[t]he test for multiplicity is whether each count ‘requires proof of an additional fact which the other does not.’ ” United States v. Garlick, 240 F.3d 789, 795 (9th Cir.2001) (quoting Blockbur- *905 ger, 284 U.S. at 304, 52 S.Ct. 180).[4] Although each count implicates Thorpe violated the same statute, Thorpe was found in possession of two distinct amounts of methamphetamine at two different times and in two distinct places. On Thorpe’s own volition, motivated by his desire to conceal the methamphetamine from police, he separated the methamphetamine into two distinct amounts of methamphetamine. Additionally, he separated them in distance since one amount was found on the spoon in the truck and the other was later recovered from Thorpe in the hospital several hours later. Simply put, the methamphetamine at issue in this case was found in two distinct amounts at two separate times and at two separate locations making the possession of methamphetamine two distinct offenses. As for Thorpe’s argument that the methamphetamine residue on the spoon was from the same batch of methamphetamine found in the coffee filter, there is simply no way to determine that the methamphetamine on the spoon was, in fact, originally part of the methamphetamine in the filter. Thorpe acknowledged that he frequently used this particular spoon, so much so that he nicknamed this spoon, to prepare his methamphetamine; therefore, it is simply an impossibility to determine if the residue found on the spoon came exclusively from the coffee filter or from a prior use of the spoon on another occasion. If Thorpe had elected to go to trial, the State would have had to prove two separate sets of facts in regard to the two possessions of methamphetamine; therefore, I submit that there is no issue of multiplicity.
¶ 22. In Dixon v. State, 465 So.2d 1092, 1094 (Miss.1985), Randy Dixon was charged in a five-count indictment for the following crimes: Possession of a Schedule II controlled substance (methaqual-one), possession of a Schedule II controlled substance (meperdine), possession of a Schedule II controlled substance (sec-obarbital), possession of a Schedule IV controlled substance (diazepam), and possession of Schedule IV controlled substance (ethchlorvynol). He was found guilty on all five counts. He was sentenced to three years on each count of possession of a Schedule II controlled substance and one year on each count of possession of a Schedule IV controlled substance. Id. His sentence totaled eleven years. Police executed a search warrant for Dixon’s home to look for drugs, and when they arrived and Dixon opened the door, Dixon immediately put his hands in his pockets. Id. Police grabbed Dixon’s hand and found tablets of drugs or other contraband. Id. Shortly thereafter, Dixon requested to retrieve some cigarettes from his car, and a police officer escorted Dixon to his car. Id. at 1095. Dixon moved the car’s floor mat and the police officer saw other drugs under the car’s gas pedal. Id. at 1095. Based on the items found on his person and in his car, Dixon was charged with the above crimes. Dixon appealed his conviction and raised multiple issues. Specifically, he argued that his indictment was defective. Id. at 1094. The Mississippi Supreme Court acknowledged that “the essential elements of the crimes [of possession of a controlled substance] are the same, the only differ *906 ence being in the maximum sentences. Our research has revealed no case reversed simply because the charges carried different punishments.” Id. at 1096-97. Further, “the two groups of charges carried different maximum punishments[;] the trial court recognized this by sentencing Dixon separately on each conviction.” Id. at 1097. This is precisely what the circuit court did in Thorpe’s case. The circuit judge recognized that Thorpe was charged with two possessions of two different amounts of a controlled substance and that these amounts carried differing maximum punishments. As such, Thorpe was sentenced separately for each of his possessions.
¶ 23. Additionally, although not binding on this Court, the Supreme Court of Kentucky has addressed a very similar issue. In Williams v. Kentucky, 336 S.W.3d 42, 45 (Ky.2011), Denver Ray Williams pled guilty to two counts of drug trafficking and one count of tampering with physical evidence. Williams was discovered with nineteen grams of cocaine during a controlled-drug buy, and after his arrest, he was caught attempting to swallow a plastic bag containing more cocaine. Id. at 44. He ultimately claimed that his sentence for the two drug trafficking charges was a violation of his double-jeopardy rights. Id. Kentucky’s Constitution reads similarly to Mississippi’s; however, Kentucky has a statute further elaborating on its double-jeopardy protections. The statute states:
When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when the offense is designed to prohibit a continuing course of conduct[,] and the defendant’s course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.
Id. at 45. (citation omitted). The Kentucky Supreme Court held that Williams “possessed two discrete quantities of cocaine — the quantity found in the car and the quantity that he tried to swallow while in the back of the cruiser.” Id. They further stated that:
Even if we assumed, solely for the sake of argument, that the cocaine that Williams tried to swallow was part of the same stash of cocaine as that found in the vehicle — each portion of cocaine assumed to be part of a single quantity of contraband — Williams is still not entitled to relief because his possession of the cocaine that he tried to swallow came after the interruption of the legal process, his arrest.
Id. Williams is factually similar to this case. Here, Thorpe was discovered possessing the methamphetamine on the spoon. He was then arrested and placed in custody in the police cruiser. It was not until hours later at the hospital when Thorpe regurgitated the contents of his stomach that police officers discovered he had swallowed an additional amount of methamphetamine. Therefore, Thorpe’s possessions were also interrupted by legal process (i.e. an arrest).
¶ 24. The State’s brief cites to numerous cases to support its primary argument that a voluntary and intelligent guilty plea waives all non-jurisdictional rights or defects incident to trial. See Bishop v. State, 812 So.2d 934, 945 (Miss.2002); Reeder v. State, 783 So.2d 711 (Miss.2001); Anderson v. State, 577 So.2d 390, 391 (Miss.1991); Jefferson v. State, 556 So.2d 1016, 1019 (Miss.1989). The State also acknowledges the recent supreme court case of Rowland v. State, 42 So.3d 503, 505 (¶¶ 4-5) (Miss.2010), in which Robert Rowland’s PCR petition claiming a double- *907 jeopardy violation was originally dismissed because it was time-barred under Mississippi Code Annotated section 99-89-5(2). The supreme court reversed and remanded the case for an evidentiary hearing on the ground that “errors affecting fundamental constitutional rights are excepted from the procedural bars of the [Uniform Post-Conviction Collateral Relief Act] UP-CCRA.” Id. at 506 (¶ 9). Rowland, however, did not overrule the principle that a voluntary and intelligent plea waives all non-jurisdictional rights or defects incident to trial. In a footnote, the supreme court did briefly address this issue by quoting the following language: “a plea of guilty to a charge does not waive a claim that— judged on its face — the charge is one which the State may not constitutionally prosecute.” Id. at 505 n. 4 (quoting Willie v. State, 738 So.2d 217, 219 (Miss.1999)). However, the crux of Rowland has no bearing on the case before us because the current case does not involve a procedural bar, and the existing record is quite adequate to properly evaluate the validity of Thorpe’s double-jeopardy claim. I would affirm the circuit court.
MAXWELL AND FAIR, JJ„ JOIN THIS OPINION.

. Dossett was the owner and driver of the white Chevrolet truck in which Thorpe was a passenger the night of his arrest.

. In United States v. Ansaldi, 372 F.3d 118, 125 n. 3 (2d Cir.2004) (internal citations omitted), the United States Court of Appeals for the Second Circuit held:
Ordinarily, courts apply the so-called "Blockburger test,” to determine whether or not two charged offenses constitute different crimes. That analysis is inappropriate in this case, because there is only one statute at issue, and so, nothing to compare. Rather than determining whether one act falls within two distinct statutes, as in Blockburger, we are asking whether two acts constitute one statutory offense.