## Daulton v. Commonwealth.

April 29, 1949.

H. C. Kennedy for appellant.

A. E. Funk, Attorney General, and H. D. Reed, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Burt Daulton has been sentenced to a term of two years in the state penitentiary for maliciously shooting at and wounding another. The chief ground relied upon for reversal of the judgment is alleged insufficiency of the evidence. Although the victim of the shooting and

his son positively identified appellant as the wielder of the gun, it is argued that their testimony, in the light of all the evidence, is so improbable as to render it unworthy of belief.

Appellant was accused of shooting Carl Daws with a shotgun at the latter's home on Sunday, November 23, 1947. The shooting occurred about 7 p. m. Pearl Daws, wife of Carl Daws, testified that appellant appeared at her home in a truck about 1 o'clock in the afternoon and inquired for her husband who had gone to the home of a neighbor. Appellant became abusive and cursed and stated that he would return and would be prepared for her husband. She testified that appellant was drunk. Carl Daws returned before appellant left, and he testified that appellant cursed him because he had not permitted appellant to haul certain tobacco. After appellant threatened him the witness ordered him to leave. About 4 p. m. appellant returned to the Daws home in his truck, accompanied by Hulan Tartar. Carl Daws and his son, Clarence Daws, had gone to the barn to feed the livestock, and the former had taken with him a 22-calibre rifle. According to the witnesses for the Commonwealth, Daulton and Tartar began cursing Daws and throwing rocks at the barn. Hulan Tartar got out of the truck and started toward the barn, at the same time threatening to kill Daws. Carl Daws shot and wounded Tartar, and appellant then placed the wounded man in the truck and left the scene. About 7 p. m. Carl Daws went to a well house in his rear yard, got a bucket of milk and was returning toward the kitchen when he heard a noise in the direction of a lumber pile about 60 feet from the house. He saw appellant in the act of raising a shotgun, and as Daws ran up the kitchen steps the gun fired. Twenty-eight shot entered Daws' body. He was taken to a hospital and was returned to his home on the following day. He testified that he was confined to his bed for three or four months. Clarence Daws testified that he heard the shot just as he was entering the house; that he grabbed a pistol which was in a cabinet, ran through the kitchen, and saw Bert Daulton standing near the lumber pile loading a shotgun. He fired at Daulton twice, and Daulton ran. There was proof that four outside electric lights at the Daws house were burning, and that a man standing at the lumber pile could be seen and recognized from the rear of the house. Two of the lights

were on the front porch, one on the rear of the house, and one on the woodshed behind the house. Two or three neighbors who went to the Daws home after the shooting testified that Carl Daws did not say who shot him, and suggested that bloodhounds be obtained. Other witnesses introduced by appellant testified that Carl and Clarence Daws stated in their presence that they did not know who fired the shot, but both Carl Daws and his son denied making these statements and both stated positively on the trial that they saw and recognized Burt Daulton. Three or four witnesses for Daulton testified that he was at his home about one-half mile from the Daws home when the shooting occurred, but two witnesses for the Commonwealth stated that they passed appellant's home about that time and the home was dark and apparently no one was there. Hubert Wilson, a neighbor, saw appellant's truck pass his home about thirty minutes before the shooting. It was driven out into a field and parked 300 or 400 yards from the Daws house.

While there was considerable evidence which tended to cast doubt on the statements of Daws and his son that they recognized appellant as the assailant, yet it was not sufficient to render their testimony so improbable as to forbid its consideration by the jury. We have written in innumerable cases that the jury is the sole judge of the credibility of witnesses. It is only where the testimony is so incredible on its face as to require its rejection as a matter of law that the jury will not be permitted to consider it. This is not such a case.

Appellant complains of what he designates as the "high-powered tactics" of counsel employed to assist the prosecution, but this consisted of a vigorous cross-examination of some of appellant's witnesses and did not transgress the bounds of propriety so as to constitute prejudicial error.

Appellant's shotgun was introduced in evidence, and this was objected to on the ground that the sheriff unlawfully took charge of it when arresting appellant at his home on a warrant charging him with a breach of the peace. The evidence could not have been prejudicial since there was other proof, and appellant admitted, that he owned a 12-gauge, single barrel shotgun.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.