Denver Ray WILLIAMS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–SC–000440–DG.

Supreme Court of Kentucky.

March 24, 2011.

Alexander Phillip DeGrand, Amy Robinson Staples, Assistant Public Advocates, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Christian Kenneth Ray Miller, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Denver Ray Williams was arrested for trafficking in a controlled substance based upon nineteen grams of suspected cocaine found during a controlled drug buy in a car that Williams occupied as a passenger. The police searched Williams at the scene and placed him in a police cruiser. For this incident, Williams was ultimately indicted for trafficking in cocaine.

En route to the police station in the back of the cruiser, Williams attempted to swallow a plastic bag containing 4.8 grams of suspected cocaine. Williams was ultimately indicted for a second count of trafficking in a controlled substance, as well as tampering with physical evidence, based upon his unsuccessful attempt to swallow the second quantity of cocaine.

We granted discretionary review in this case to consider whether Williams may properly be charged with two counts of trafficking in a controlled substance for possessing one quantity of cocaine in a vehicle and another quantity on his person shortly thereafter. Under the facts presented in this case, we conclude that the evidence supported two trafficking charges because Williams possessed two discrete amounts of cocaine in two discrete locations. The Court of Appeals reached the same conclusion, so we affirm their holding.

## I. FACTUAL AND PROCEDURAL HISTORY.

Williams pleaded guilty in the trial court to the two trafficking charges and the tampering with physical evidence charge. He received a cumulative twenty-one year sentence, with one year to serve [1] and service of the remaining twenty years suspended while Williams was placed on probation.

After Williams's probation was revoked, he filed a motion for postconviction relief under Kentucky Rules of Criminal Procedure (RCr) 11.42, mainly claiming that the dual trafficking convictions constituted double jeopardy and that his attorney was ineffective for failing to object on double jeopardy grounds. After holding a hearing, the trial court denied Williams relief; and the Court of Appeals affirmed.

## II. ANALYSIS.

Williams raises two main arguments. His first main argument is that the two trafficking charges violate his right to be free from double jeopardy. As a part of that argument, he further contends that his counsel was ineffective for failing to object to the second trafficking charge on double jeopardy grounds. His second main argument is that his trial counsel was ineffective for failing to conduct an adequate investigation of the case. We con-

---

1. The actual amount of additional time that Williams would be incarcerated was vastly reduced, if not eliminated entirely, by the fact that the final judgment of conviction gave Williams credit for 305 days of jail-time credit.

clude that Williams is not entitled to relief on either ground.

## A. No Double Jeopardy Based on Two Trafficking Charges.

■ Section 13 of the Kentucky Constitution provides, in relevant part, that "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb...." This section of our state Constitution is known as the Double Jeopardy Clause.[2] The statutory enactment aimed at fleshing out the constitutional provision of the Double Jeopardy Clause is KRS 505.020. As it pertains to the case at hand, subsection one of that statute provides, in pertinent part, as follows:

> When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when ... [t]he offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

Williams contends that the two trafficking charges "arise from a single course of conduct, namely a foiled drug sale." So Williams argues that his "possession of the cocaine was therefore a continuing course of conduct" and that his arrest "did not fully interrupt his possession of the quantity of cocaine." We disagree.

We agree that, generally, "[c]ontinued possession of contraband is a single course of conduct that gives rise to a single offense."[3] But, in the case at hand, Williams possessed two discrete quantities of cocaine—the quantity found in the car and the quantity that he tried to swallow while in the back of the cruiser. And precedent requires that the same contraband must be continually possessed—without an interruption in the form of legal process—in order for only one offense to have occurred.[4] Even if we assumed, solely for the sake of argument, that the cocaine that Williams tried to swallow was part of the same stash of cocaine as that found in the vehicle—each portion of cocaine assumed to be part of a single quantity of contraband—Williams is still not entitled to relief because his possession of the cocaine that he tried to swallow came after the interruption of the legal process, his arrest.[5]

---

2. *See also* U.S. Const. Amend. V.

3. *Stewart v. Commonwealth*, 306 S.W.3d 502, 506 (Ky.2010).

4. *Fulcher v. Commonwealth*, 149 S.W.3d 363, 376 (Ky.2004) ("other jurisdictions have held that uninterrupted possession *of the same contraband* over a period of time is but one offense constituting a continuing course of conduct, precluding convictions of multiple offenses for possession of the same contraband on different dates") (emphasis added). In *Stewart*, we construed our reference in *Fulcher* to the holdings of other jurisdictions regarding continuous possession of the same contraband constituting only one offense to have been an approval of those other jurisdictions' holdings. *See* 306 S.W.3d at 506.

5. We reject as speculation Williams's assertion that if the police "had conducted a proper pat-down search of Mr. Williams prior to placing him in the back of the police car, they likely would have found the additional bag of cocaine...." Obviously, such a conclusion is speculative. And it is beyond dispute that illegal drugs are not infrequently concealed in the most private areas of the human body. So discovery of those drugs during a routine search or pat-down in the field may not inevitably occur, nor would a failure to find those well-hidden drugs in the field necessarily signal sloppy or inefficient police work. Instead, drugs hidden in the private areas of the human body may sometimes only be discovered by an invasive search. We decline to hold that police must always discover all drugs

We have held at least twice in recent years that an arrest constitutes legal process sufficient to interrupt the possession of contraband (*i.e.*, cocaine).[6] Williams acknowledges that it "seem[s] obvious" that his arrest constitutes legal process but contends that his case is factually distinguishable. Essentially, Williams contends that his case is distinguishable because he was not asked whether he possessed any more contraband after being arrested, meaning that his continued possession of the second quantity of cocaine after being arrested was not the result of a new impulse to commit a drug-related offense. Williams's argument is a request for us to return to the single impulse test, which we have definitely jettisoned and which we decline to resurrect.[7]

We also disagree with Williams's assertion that we should follow the rationale in *Rashad v. Burt*, a decision from the United States Court of Appeals for the Sixth Circuit.[8] In *Rashad*, police found one stash of cocaine in a defendant's home and another stash of cocaine when they later searched the defendant's vehicle, which had been impounded following the defendant's arrest. The defendant ultimately filed a habeas corpus action, and the Sixth Circuit held that the defendant should not have been subjected to two separate charges because his "possession of both quantities occurred at the same time and place, and displayed a single intent and goal . . . ."—that of distribution.[9]

*Rashad* has been criticized for reasoning "inconsistent with a wealth of Supreme Court authority . . . ."[10] And, as it pertains to the specific facts of the case at hand, *Rashad* does not discuss whether the defendant's arrest could have been construed as legal process sufficient to interrupt the continuous possession. By contrast, we remain convinced that our precedent holding that a defendant may

concealed on a defendant's person via a quick field search because such a holding would be tantamount to creating an unreasonable requirement that the authorities must conduct a full-blown, invasive body search in the field immediately after arresting a suspect.

6.  *See, e.g., Stewart*, 306 S.W.3d at 506 ("A quantity of cocaine was discovered in a small bag in the vehicle before Stewart arrived at the detention facility. A second quantity of cocaine was ultimately found on his person following his arrest. His arrest constitutes legal process' such as to interrupt his possession of cocaine . . . ."); *Fulcher*, 149 S.W.3d at 377 ("Under our statute, the continuing course of conduct can only be carved into separate offenses if it has been interrupted by legal process. 'Legal process' would include an arrest warrant, an indictment, or an arraignment. We conclude that Appellant's arrest for use or possession of drug paraphernalia on July 24, 2001, was a legal process that interrupted his possession of the aluminum foil 'boat' so that his subsequent possession of the same paraphernalia (if it was the same) would constitute a separate offense. Thus, if he was twice convicted of possessing the same

aluminum foil 'boat,' those convictions did not constitute double jeopardy.") (citation omitted).

7.  *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky.1996) ("we now depart from the 'same conduct' test . . . and the 'single impulse' test . . . and declare that double jeopardy issues arising out of multiple prosecutions henceforth will be analyzed in accordance with the principles set forth in *Blockburger v. United States, supra*, [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], and KRS 505.020."). *See also Dixon v. Commonwealth*, 263 S.W.3d 583, 588 (Ky.2008) ("Although we once departed from using the *Blockburger* test, the resulting confusion moved us to state emphatically [in *Burge*] that we would 'henceforth' rely upon *Blockburger* to resolve double jeopardy claims.").

8.  108 F.3d 677 (6th Cir.1997).

9.  *Id.* at 681.

10.  *United States v. Williams*, 155 F.3d 418, 421 (4th Cir.1998).

properly be charged with multiple offenses based on possession of the same contraband if the possession is interrupted by legal process—such as an arrest in the case at hand—is a correct exposition of the law and is applicable to this case.

Moreover, *Rashad* appears to be in conflict with current Kentucky precedent.[11] In *Simpson,* the defendant was found in a car with marijuana on his person. The defendant was arrested and charged with misdemeanor trafficking in marijuana, and the car was impounded. A few days later, the car was searched under a search warrant, and more marijuana was discovered. The defendant was charged with felony trafficking in marijuana based upon the marijuana found in the car. The defendant pleaded guilty to possession of marijuana based upon the marijuana found on his person and then argued that double jeopardy prevented him from being subjected to a separate charge for the marijuana found in the car. The Court of Appeals disagreed, correctly holding that "[t]he difference in time between the patdown and the search of the car bolster[ed] our belief that Simpson's charges did not spring from the same incident."[12] The Court of Appeals also rejected Simpson's argument that the police erred by failing to conduct a search of the car incident to the initial arrest for misdemeanor trafficking in marijuana, instead holding that it did "not find fault with the officers' actions in choosing to secure the car and obtain a search warrant before conducting a search of Simpson's car."[13]

Although *Simpson* does not discuss *Rashad,* it appears to us that the holdings are in conflict. Obviously, the facts of the case at hand are different from both *Rashad* and *Simpson.* In the case at hand, the later charge was based upon a quantity of drugs found on Williams's person after Williams's initial arrest, and—unlike *Simpson* and *Rashad*—there were no drugs later found in a vehicle impounded pursuant to a defendant's drug-related arrest. Neither *Rashad* nor *Simpson,* therefore, is directly controlling in the case at hand, although we construe *Simpson* as being in general accord with Kentucky double jeopardy precedent. So to the extent that *Rashad* (which is factually distinguishable from the case at hand because there is no indication in *Rashad* that the defendant continued knowingly to possess a quantity of cocaine after being arrested)[14] may be construed as leading to a different conclusion, we respectfully decline to follow its reasoning.

In sum, therefore, we conclude that Williams was properly charged with two separate trafficking offenses.[15] Consequently, any objection based on double jeopardy grounds lodged by Williams's trial counsel perforce would have lacked merit. An attorney cannot be ineffective for failing to raise a non-meritorious claim.[16]

---

11. *Simpson v. Commonwealth,* 159 S.W.3d 824 (Ky.App.2005).

12. *Id.* at 828.

13. *Id.*

14. To the contrary, the Sixth Circuit repeatedly emphasized in *Rashad* that the defendant possessed the different stashes of cocaine "at the same time and place...." 108 F.3d at 680, 681.

15. Williams does not argue that either quantity of cocaine was insufficient to support a charge of trafficking in a controlled substance.

16. *See, e.g., Bowling v. Commonwealth,* 80 S.W.3d 405, 415 (Ky.2002) ("It is not ineffective assistance of counsel to fail to perform a futile act."); *Clemons v. Armontrout,* 921 F.2d 187, 191 (8th Cir.1990) ("Since the double jeopardy argument is meritless, there can be no claim of ineffective assistance for counsel's failure to point it out.").

Accordingly, we reject Williams's contention that his attorney was ineffective for failing to object on double jeopardy grounds to the two trafficking charges.

### B. No Ineffective Assistance of Counsel Based Upon Trial Counsel's Allegedly Inadequate Investigation.

■ Williams's second main argument is that his trial counsel was ineffective for failing to conduct an adequate investigation of Williams's case. More specifically, Williams contends that his trial counsel, who was employed by the public defender's office, stated at the hearing on Williams's RCr 11.42 motion that he had not investigated the facts of Williams's case because he had an excessively burdensome caseload. Trial counsel further testified in the RCr 11.42 hearing that he did not believe an investigation was necessary because Williams wanted the case resolved as quickly as possible. Williams contends his attorney's lack of investigation caused him to suffer prejudice because the attorney negotiated a plea agreement without talking to witnesses and without having obtained a general understanding of the strength—or weakness—of the Commonwealth's case against Williams.

We disagree with Williams's assertion that he is entitled to post-conviction relief. But before addressing the rationale underlying our decision, we must set forth the proper standards that guide our review.

■ "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." [17] In order to determine if counsel was effective, a court must "first determine whether counsel's representation 'fell below an objective standard of reasonableness' " [18] Although a court is not bound by them, standards and norms of practice set forth by organizations such as the American Bar Association can be useful tools in determining whether an attorney's performance fell below the "practice and expectations of the legal community...." [19]

■ The second query a court must engage in to determine if counsel was ineffective is "whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [20] This inquiry is aimed at determining whether counsel's allegedly ineffective performance prejudiced a criminal defendant. In the context of a guilty plea, such as in the case at hand, "to obtain relief ... a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." [21]

■ A post-conviction petitioner's burden is heavy because "[s]urmounting *Strickland*'s high bar is never an easy task." [22] Indeed, a reviewing court "should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." [23]

Williams heavily relies upon guidelines from organizations such as the National Legal Aid and Defender Association to

---

17. *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 1480–81, 176 L.Ed.2d 284 (2009) (internal quotation marks omitted).

18. *Id.* at 1482, *quoting Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

19. *Padilla*, 130 S.Ct. at 1482.

20. *Id.* (internal quotation marks omitted).

21. *Id.* at 1485.

22. *Id.*

23. *Id.*

claim that counsel should conduct an investigation of a case, regardless of a defendant-client's desire to enter a guilty plea. We decline to be bound by the guidelines relied upon by Williams or, for that matter, any other similar guidelines promulgated by any legal organization or association. Although we are sympathetic to the high volume of cases public defenders often must carry, we accept, as a general rule, that an effective attorney—regardless of a high caseload—would conduct at least some investigation into the client's case.[24] But we need not determine whether Williams's attorney's investigation was adequate because Williams fails to demonstrate prejudice resulting from his counsel's allegedly deficient performance.[25]

To demonstrate prejudice, Williams argues that his attorney negotiated a plea agreement with the Commonwealth without first adequately investigating Williams's case. Even if we assume, solely for the sake of argument, that the attorney failed to conduct an adequate investigation[26] (i.e., we assume deficient performance), Williams has not shown demonstrable prejudice as a result of that deficient performance. First, the plea agreement negotiated by Williams's attorney is highly favorable to Williams. In other words, since the terms of the plea agreement are quite favorable to Williams[27] and because

24. *Haight v. Commonwealth*, 41 S.W.3d 436, 446 (Ky.2001) ("This Court has recognized the necessity for complete investigation by defense counsel. We must agree with the view expressed by the United States Supreme Court in *Strickland, supra,* to the effect that counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary under all the circumstances and applying a heavy measure of deference to the judgment of counsel. A reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct. *Thomas v. Gilmore,* 144 F.3d 513 (7th Cir. 1998). The investigation must be reasonable under all the circumstances.").

*Haight* was overruled on other grounds by *Leonard v. Commonwealth,* 279 S.W.3d 151, 159 (Ky.2009).

25. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

26. We are aware that the record reflects that Williams's attorney did communicate at times with Williams about Williams's case and that Williams's attorney did conduct at least some basic level of investigation because the attorney did speak to at least one police officer. So it cannot be said that Williams's attorney totally ignored Williams's case or failed to conduct any investigation whatsoever, and we do not intend to so hold. To the contrary and in the interest of expediency and efficiency, as envisioned by *Strickland,* we are merely assuming for purposes of argument that the attorney's investigation was deficient because Williams has not demonstrated any actual prejudice stemming from that purportedly inadequate investigation.

27. Williams was charged with two counts of first-degree trafficking in a controlled substance (Class C felony offenses, as per the terms of the indictment), one count of tampering with physical evidence (a Class D felony), and being a persistent felony offender (PFO) in the first degree. Nonetheless, his plea agreement resulted in his receiving a sentence that required him to serve only one year of imprisonment (toward which he received at sentencing 305 days of jail-time credit), after which he was placed on proba-

the plea agreement enabled Williams to achieve his goal of resolving the case and being free from custody, Williams has failed to show that the allegedly inadequate investigation and preparation by his attorney caused him to suffer demonstrable prejudice.

We also reject Williams's argument that because he was seemingly acquitted by a jury on an unrelated trafficking charge, he suffered demonstrable prejudice because of his trial counsel's alleged deficient performance. The fact that Williams chose to go to trial on other charges does not have any real bearing on whether he would have chosen to go to trial on the charges at hand.

Similarly, Williams has not demonstrated prejudice from his attorney's alleged failure to interview eight witnesses whom Williams wanted subpoenaed. As the Commonwealth notes in its brief, "though Appellant [Williams] proffers . . . a list of witnesses he wanted his counsel to interview, Appellant fails to allege with specificity what evidence those witnesses would have given to support a viable defense." RCr 11.42(2) provides that a petition brought under that rule "shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion." Williams's failure to specify precisely what exculpatory or mitigating evidence these additional witnesses, many—if not all—of whom are deceased, would have provided is fatal to his claim that he was prejudiced by the ostensible lack of investigation by counsel of those witnesses.

■■■ Finally, the record simply refutes any allegation that Williams was improperly induced or coerced into pleading guilty, or that his guilty plea was unknowing or otherwise involuntary.[28] It is undisputed that the trial court conducted a properly thorough colloquy with Williams before accepting Williams's guilty plea. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[29] In short, we reject Williams's allegation that his attorney's alleged failure to investigate adequately somehow caused Williams to enter his guilty plea without the assistance of counsel.

## III. CONCLUSION.

The opinion of the Court of Appeals affirming the trial court's order denying Williams RCr 11.42 relief is affirmed.

All sitting. ABRAMSON, CUNNINGHAM, SCHRODER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., concurs in result only because Appellant possessed two different quantities of cocaine, which were sufficient to support

---

tion. Given the multiple felony charges, including the PFO sentence aggravator, it is clear that the terms of the plea agreement were favorable to Williams.

28. Although he did not have perfect recollection of the specifics of Williams's case, Williams's allegedly ineffective attorney testified that his common practice was to explain all the terms of a plea agreement to his clients as though his clients were in the third or fourth grade. This practice, when taken together with the colloquy between the trial court and Williams, invalidates Williams's contention that his guilty plea was made without counsel and was not a voluntary and intelligent choice.

29. *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

two different convictions without violating KRS 505.020 or double jeopardy principles.